CIARDI CIARDI & ASTIN
Albert A. Ciardi, III, Esquire
Thomas D. Bielli, Esquire
Jennifer E. Cranston, Esquire
One Commerce Square
2005 Market Street, Suite 1930
Philadelphia, PA 19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551

UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : |
| | : CHAPTER 11 |
| COLONNADE PROPERTY, LLC | : |
| | : |
| | : BANKRUPTCY NO. 11-14061(JKF) |
| DEBTOR | : |
| | : |

**MOTION OF THE DEBTOR AND DEBTOR-IN-POSSESSION FOR ORDER PURSUANT TO 11 U.S.C. §363 TO (I) PERMIT USE OF CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION TO PARTIES WITH INTEREST IN CASH COLLATERAL AND FOR RELATED RELIEF, (II) AUTHORIZE PAYMENT OF PREPETITION WAGES AND (III) REQUEST FOR EXPEDITED HEARING, REDUCED NOTICE PERIOD AND LIMITED NOTICE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(C)(1) AND E.D. PA. L.B.R. 5070(F)**

Colonnade Property, LLC (the "Debtor"), by and through proposed counsel, Ciardi Ciardi & Astin, hereby requests authority to (I) use Cash Collateral and Provide Adequate Protection to Parties with Interest in Cash Collateral, (II) Pay Prepetition Wages and (III) an Expedited Hearing, Reduced Notice Period and Limited Notice Pursuant to Federal Rule of Bankruptcy Procedure 9006(c)(1) And E.D. Pa. L.B.R. 5070(f) and in support thereof and respectfully represents:

1

## BACKGROUND

1. On May 19, 2011 (the "Filing Date"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code, as amended ("Bankruptcy Code").

2. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. §157(b). Venue of this case is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

3. No creditors' committee has been appointed in this Chapter 11 case by the United States Trustee. No Trustee or examiner has been appointed in the Debtor's Chapter 11 case.

4. AREI Colonnade 1, LLC, AREI Colonnade 2, LLC, AREI Colonnade 3, LLC, AREI Colonnade 4, LLC, AREI Colonnade 5, LLC, AREI Colonnade 6, LLC, AREI Colonnade 7, LLC, AREI Colonnade 8, LLC, AREI Colonnade 9, LLC, AREI Colonnade 10, LLC, AREI Colonnade 11, LLC, AREI Colonnade 12, LLC, AREI Colonnade 13, LLC, AREI Colonnade 14, LLC, AREI Colonnade 15, LLC, AREI Colonnade 16, LLC, AREI Colonnade 17, LLC, AREI Colonnade 18, LLC, AREI Colonnade 19, LLC and AREI Colonnade 20, LLC (hereinafter collectively referred to as the "Tenants in Common") are the owners of real property, as tenants in common, located at 300 Perkiomen Avenue, Schwenksville, Montgomery County, Pennsylvania. Attached hereto as **"Exhibit A,"** is a true and correct copy of that certain Tenants in Common Agreement dated March 31, 2009.

5. The Debtor is the operator of The Colonnade Senior Living Community (the "Colonnade") and is a Tenant of the Tenants in Common pursuant to a Master Lease Agreement dated August 13, 2008.

6. The Colonnade provides apartment-style living with the security of having personal assistance around-the-clock. Each suite offers the comfort and independence of home

with a variety of floor-plan options to choose from. While no two apartments are exactly alike, they all include a compact or full-size kitchen; individual heat and air-conditioning; a private bath with a step-in shower; and emergency call bells in each bathroom and bedroom area. The Colonnade also offers an independent-living option for those residents who need minimal assistance, but still desire the secure and convenient lifestyle we offer, such as restaurant-style dining; housekeeping and laundry services.

7. The Debtor is made up of approximately 94 units for a total of 105 beds.

8. The Debtor's revenue is generated primarily from monthly rental income in the aggregate amount of $140,554.27.

9. Debtor employs approximately fifty six (56) employees at The Colonnade and pays approximately $91,250.00 per month in payroll.

10. Debtor purchases products on a daily basis for its operations.

11. The Tenants in Common and the Debtor are parties to that certain Loan Agreement with National Penn Bank ("National Penn") dated April, 2009. Attached hereto as **"Exhibit B,"** is a true and correct copy of that certain Loan Agreement dated April, 2009 (the "Loan Agreement"). Specifically, the Debtor is a guarantor under the Loan Agreement and collateralized said guarantee with a lien and security interest in the Collateral, as defined in Section 4.01 of the Loan Agreement, in the original principal amount of $2,800,000.

12. The Debtor requires use of its cash and accounts to continue operations.

**THE BASIS FOR THE RELIEF REQUESTED AND THE REASONS THEREFOR**

13. Section 363(c) of the Bankruptcy Code allows a debtor to use, sell or lease cash collateral if each entity that has an interest in cash collateral consents or the Court authorizes the use. See 11 U.S.C. §363(c)(2).

3

14. The Debtor has prepared a budget (the "Budget") detailing its proposed use of cash collateral from May 24, 2011 through June 23, 2011. This budget is attached hereto as **"Exhibit C."**

15. The Budget lists Debtor's monthly expenses and revenues.

16. The continued use of cash collateral will allow the Debtor to continue operating, so that Debtor can continue with this reorganization by proposing a plan to satisfy claims of creditors. In the meantime, Debtor believes National Penn's interests are adequately protected because Debtor's Budget indicates that, with the Tenants in Common advancing, on an administrative basis, funds for cash flow deficiencies, the Debtor can maintain or increase current collateral levels.

17. Approval of the Debtor's request to use cash collateral is in the best interest of the Debtor and creditors of the estate.

18. The Debtor proposes to provide adequate protection in the form of a replacement lien to the extent National Penn has a lien pre-petition which is not subject to challenge and in the same extent, priority and validity as existed pre-petition. Moreover, the Debtor proposes continued adequate protection payments to National Penn of principal and interest in the amount of $18,630.00 per month.

19. In order to maintain the Debtor's operation, Debtor requires the use of cash collateral for the payment of expenses as more specifically set forth in Budget. Through the payment of the above referenced expenses the Debtor will be able, not only to maintain the status quo, but also to facilitate its reorganization and enhance the collateral.

20. Unless the Debtor can continue to operate, it will be unable to reorganize and enhance the collateral to the detriment of its creditors.

21. Finally, to maintain employee morale and preserve the Debtor's workforce at this critical time, to reduce the disruption caused by the bankruptcy filings on the Debtor's business operations, and to minimize the personal hardship the Debtor's employees will suffer if its employee-related obligations are not paid when due, the Debtors request entry of an order authorizing, but not requiring, the Debtor (a) to pay, in the ordinary course of business, all prepetition employee compensation and employee benefits earned during May 15, 2011 through May 19, 2011, on Friday, June 3, 2011; (b) to honor and take all necessary actions to continue in the ordinary course of business until further notice (but not to assume), certain employee-related programs, policies and plans that were in effect as of the filing of these chapter 11 cases; and (c) to make, in the ordinary course of business, all normal and customary deductions and withholdings and pay all taxes associated with the Debtor's obligations to employees.

22. By this motion, the Debtor does not seek authorization to assume any contracts relating to senior executives currently employed by the Debtor. Further, the Debtor does not seek to pay any compensation or other amounts to executives other than prepetition amounts due as regular compensation, amounts due in connection with the continuation of the employee benefits described herein, and expense reimbursement amounts, all in accordance with existing plans, policies, and programs.

23. As of the Petition Date, the Debtor employed approximately 56 employees (the "Employees"). The majority of the Debtor's employees are paid hourly. In the ordinary course of business, the Debtor issues payroll checks on a bi-weekly basis, totaling approximately $91,250.00 in gross wages.

24. The Debtor's next payroll is scheduled to occur on Friday, June 3, 2011. As of the Petition Date, the Debtor estimates that it owes its employees approximately $27,375 in

unpaid, gross wages (the "Unpaid Compensation") accruing from May 15, 2011 through May 19, 2011. Items of Unpaid Compensation were outstanding on the Petition Date because the Debtor's next scheduled payment disbursement is not until June 3, 2011.

25. The Debtor hereby seeks authority to pay Unpaid Compensation accruing from May 15, 2011 through May 19, 2011. The Debtor does not believe that the Unpaid Compensation payable to any one employee exceeds $10,950.

26. The Debtor maintains various plans and policies to provide employees with medical, dental, drug prescription, life and accidental death or dismemberment insurance, retirement savings, workers' compensation and other similar benefits (collectively the "Employee Benefits"). The Debtor wishes to continue offering the Employee Benefits to the Employees and their families. Any failure to pay the Employee Benefits would be injurious to employee welfare, morale and expectations. The Debtor is current on monies owed under the various Employee Benefit programs.

27. By this Motion, the Debtor is not seeking to assume any executory contracts. Also, the Debtor seeks only the authority to make the compensation and a reimbursement payment described herein, and is not assuming any obligations to make such payments, nor is it assuming any administrative or pre-petition or post-petition liabilities with respect thereto.

28. The Debtor does not believe, at present, that any of its employees are owed aggregate amounts for services rendered prior to the Petition Date in excess of the $10,950 amount to which such employees would be entitled with administrative priority under section 507 of the Bankruptcy Code. The Debtor urges the Court to approve the payment of the amounts owed to the Debtor's employees, given the critical nature of the employees to the Debtor's businesses, as stated above. The Debtor believes that failure to pay the employees for their pre-

petition services in full would have grave consequences for the Debtor's ability to function in the future.

29. The Debtor hereby seeks authority to pay all Employee Benefits in the ordinary course of business. The Debtor also seeks authority to continue the Employee Benefits programs after the Petition Date.

30. As a result of the commencement of these chapter 11 cases, and in the absence of an order of the Court providing otherwise, the Debtor will be prohibited from paying or otherwise satisfying its prepetition obligations regarding Unpaid Compensation and Employee Benefits (collectively, the "Prepetition Employee Obligations"), and the checks, wire transfers and direct deposit transfers issued in respect of the Prepetition Employee Obligations will be dishonored.

31. Accordingly, pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code and the "necessity of payment" doctrine, the Debtor seeks authority to; (i) pay its outstanding Prepetition Employee Obligations; and (ii) continue its practices, programs and policies in effect as of the Petition Date with respect to the Prepetition Employee Obligations. The Debtor further requests that the Court authorize and direct the bank at which the Debtor maintain the account from which the Debtor's payroll obligations are disbursed, to honor and pay all prepetition and postpetition checks issued or to be issued and fund transfers requested or to be requested, by the Debtor in respect of the Prepetition Employee Obligations. The Debtor also seeks authority to issue new postpetition checks or fund transfer requests with respect to prepetition obligations that may have been dishonored by the bank. The relief requested herein is essential and necessary to the Debtor's continued operations in chapter 11 and to an effective reorganization.

32. The payment of the Prepetition Employee Obligations is justified under Section 105(a) of the Bankruptcy Code and the well-established "necessity of payment doctrine." The Debtor believes that the amounts they seek to pay are entitled to priority under Sections 507(a)(3) and (a)(4) of the Bankruptcy Code, with very few conditional exceptions.

33. Under the "necessity of payment doctrine" and Section 105(a) of the Bankruptcy Code, courts have consistently permitted immediate payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors, specifically including payment of prepetition claims of employees. See, e.g., Miltenberger v. Logansport Ry. Co., 106 U.S. 286, 312 (1882) (stating that payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of . . . [crucial] business relations"); Gregg v. Metro. Trust Co., 197 U.S. 183, 187 (1905) (stating that "the payment of the employees of the [rail]road is more certain to be necessary in order to keep it running than the payment of any other class of previously incurred debts."); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989) (finding that payment of prepetition wages, salaries, reimbursable business expenses and health benefits to active employees of debtor airline authorized); In re Chateaugay Corp., 80 B.R. 279, 286-88 (S.D.N.Y. 1987), appeal dismissed, 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing debtor, prior to plan stage of case, to pay prepetition wages, salaries, expenses and benefits); In re Gulf Air, Inc., 112 B.R. 152, 153-54 (Bankr. W.D. La. 1989) (permitting payment of prepetition wages, benefits and expenses as necessary to maintain going concern values and to assist reorganization efforts).

34. The continued operation of the Debtor's business depends on the retention and motivation of its Employees. The Debtor believes that, to avoid employee resignations and to maintain employee morale, it is critical that it be authorized to pay each of its Employees all

compensation amounts that have been earned under the Debtor's prepetition contractual obligations or practices.

35. It is equally essential that the Debtor take all actions reasonably necessary to continue on an uninterrupted basis in the ordinary course of business all of the employment policies that were in effect prior to the Petition Date. Payment of these obligations and the continuation of all of these programs and policies are essential to ensure that the Debtor retain its employees and maintain employee morale.

36. Moreover, the Debtor estimate that the amounts its seeks to pay herein are entitled to priority under Sections 507(a)(3) and (a)(4) of the Bankruptcy Code, with very few conditional exceptions. Section 507(a)(3) of the Bankruptcy Code grants priority to employee claims for "wages, salaries, or commissions, including vacation, severance and sick leave pay" earned within ninety days before the filing of the applicable petition up to $10,950 per employee. Similarly, section 507(a)(4) of the Bankruptcy Code provides that claims for contributions to certain employee benefit plans are also afforded priority treatment to the extent of the number of employees covered by each plan multiplied by $10,950, less any amounts paid pursuant to Section 507(a)(3) of the Bankruptcy Code.

37. Thus, granting the relief sought herein would affect only the timing, and not the amount of payment of the Prepetition Employee Obligations to the extent they constitute priority claims. Many Employees live from paycheck to paycheck and rely exclusively on receiving their full compensation or reimbursement of their expenses in order to continue to pay their daily living expenses. These Employees will be exposed to significant financial and health-related problems if the Debtor is not permitted to pay certain of the unpaid expenses and Prepetition Employee Obligations, particularly wages and other Employee Benefits. Moreover, the Debtor

believes that if it is unable to honor the Prepetition Employee Obligations, employee morale and loyalty will be jeopardized at a time when it is most critical. If the Debtor is not authorized to pay for the Employee Benefits, then many of the Employees may not be reimbursed or otherwise have their health benefit claims paid. In addition, certain Employees may become primarily obligated for the payment of these claims in cases where health care providers have not been reimbursed, and may face having their health care services terminated. The Debtor believes that such uncertainty will cause significant anxiety at precisely the time the Debtor needs its Employees to perform their jobs at peak efficiency.

38. Further, with respect to that portion of the Prepetition Employee Obligations that constitutes "trust fund" taxes, the relevant taxing authorities would hold a priority claim under section 507(a)(8) of the Bankruptcy Code in respect of such obligations. Moreover, the monies payable for trust fund taxes generally are not property of a Debtor's estate. See Begier v. Internal Revenue Serv., 496 U.S. 53, 67 (1990).

39. In other cases, this Court has approved payment of prepetition claims of employees for compensation, benefits and expense reimbursements and the continuation of benefit programs, policies and plans on the grounds that such relief was necessary to effectuate a successful reorganization.

40. For all the reasons previously set forth herein, the Debtor submits that payment of the Prepetition Employee Obligations and the continuation of the related employment policies are necessary to the Debtor's reorganization and should be authorized by this Court.

41. Finally, with respect to the payroll period ending on May 14, 2011 and paid on May 20, 2011, the Debtor requests entry of an order authorizing said payment one day post-petition *nunc pro tunc* to the Petition Date.

## REQUEST FOR EXPEDITED CONSIDERATION

42. The Debtor requests expedited treatment in connection with the Motion because it requires the immediate use of rental income to fund ongoing operations at the Property. Accordingly, the Debtor requests that a hearing on use of cash collateral through June 23, 2011 be held at the convenience of the Court but no later than May 26, 2011 due to the Memorial Day holiday weekend.

43. As of the filing of this Motion, no trustee, examiner or creditor's committee has been appointed in this Chapter 11 case. Notice of this Motion has been given via facsimile or electronic mail to the United States Trustee and the Lender. The debtor submits that no other notice need be given in light of the exigencies of the circumstances and the irreparable harm to the Debtor, its estate and all parties in interest that would ensue if the relief requested herein is not granted.

44. No previous request for the relief sought herein has been made to this or any other Court.

45. Prior to filing this Motion, counsel for the Debtor contacted counsel for the Office of the United States Trustee to advise him of the request for an expedited hearing and the relief requested therein.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order in the form attached hereto and for such other and further relief as this Court deems just and proper.

                            Respectfully submitted,

                            CIARDI CIARDI & ASTIN

                            */s/ Jennifer E. Cranston*
                            Albert A. Ciardi, III, Esquire
                            Thomas D. Bielli, Esquire
                            Jennifer E. Cranston, Esquire
                            One Commerce Square
                            2005 Market Street, Suite 1930
                            Philadelphia, PA 19103
                            Telephone: (215) 557-3550
                            Facsimile: (215) 557-3551

Dated: May 24, 2011